UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BENJAMIN CLARENCE McCASLIN,

                              Plaintiff,                  Case # 18-CV-1135-FPG

v.                                                                    DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

Plaintiff Benjamin Clarence McCaslin brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 14. For the reasons that follow, the Commissioner's motion is DENIED, McCaslin's motion is GRANTED, and this case is remanded to the Commissioner for further proceedings.

## BACKGROUND

In June 2014, McCaslin protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 67. He alleged disability since December 2013 because, among other reasons, he could not move either arm above shoulder level. *Id.* On April 25, 2017, McCaslin and a vocational expert ("VE") testified at a hearing before Administrative Law Judge Melissa Lin Jones ("the ALJ"). Tr. 33. On June 26, 2017, the ALJ issued a decision finding that

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

McCaslin is not disabled. Tr. 19-29. On August 23, 2018, the Appeals Council denied McCaslin's request for review. Tr. 1-3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ analyzed McCaslin's claim for benefits under the process described above. At step one, the ALJ found that McCaslin had not engaged in substantial gainful activity since the alleged onset date. Tr. 21. At step two, the ALJ found that McCaslin has severe impairments of obesity, history of heart attacks, and triceps tear at his left elbow. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 22.

Next, the ALJ determined that McCaslin retains the RFC to perform light work with additional limitations. Tr. 23. At step four, the ALJ found that McCaslin cannot perform his past relevant work. Tr. 27. At step five, the ALJ relied on the VE's testimony and found that McCaslin can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 28. Accordingly, the ALJ concluded that McCaslin is not disabled. *Id.*

## II. Analysis

McCaslin argues, among other things, that the ALJ erred because she failed to obtain the treatment notes of Dr. Yacob. Because the Court agrees, it does not reach McCaslin's other arguments.

Because Social Security proceedings are inquisitorial rather than adversarial, *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), the ALJ, "unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moron v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citation omitted). As part of this duty, the ALJ must "investigate the facts and develop the

arguments both for and against granting benefits." *Sims*, 530 U.S. at 111. Therefore, under the applicable regulations, before making a disability determination, the ALJ must develop a claimant's complete medical history. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal citation omitted). Importantly, the ALJ bears this affirmative duty "even when the claimant is represented by counsel." *Sotososa v. Colvin*, No. 15-CV-854, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016). Consequently, this Court has held that, where there is a gap in the record, an ALJ cannot satisfy his duty to develop the record merely by requesting that claimant's counsel obtain the missing evidence. *See id.* (collecting cases). The ALJ must make some additional effort beyond that request, like following up with counsel or obtaining the missing records himself. *See id.*

The evidentiary gap that McCaslin identifies relates to his cervical spine and shoulder complaints. Although McCaslin did not expressly identify neck or shoulder issues in his disability application, he did allege that he was disabled in part because he could not move either arm above shoulder level. *See* Tr. 67. The medical record reflects these complaints. Since at least Spring 2013, McCaslin has intermittently complained of shoulder pain. *See, e.g.*, Tr. 320, 357, 374.

In December 2014, he met with treating physician Muhaned Al-Humadi, M.D, complaining of decreased grip strength and pain in his shoulders. Tr. 374. Dr. Al-Humadi believed that McCaslin's decreased grip strength was related to his cervical spine. *Id.* Dr. Al-Humadi ordered an MRI and referred McCaslin to Dr. Yacob. *Id.* A January 2015 MRI showed disc bulges in McCaslin's cervical spine. Tr. 389. In February 2015, on the referral of Dr. Yacob, McCaslin had a physical therapy evaluation, at which he complained of neck and shoulder pain that increased when he lifted his arms. Tr. 320. The physical therapist noted that the evaluation findings were consistent with McCaslin's complaints and opined that McCaslin was "functionally limited with

5

all active use of his arms." Tr. 323. In March 2015, Dr. Yacob ordered an MRI of McCaslin's right shoulder, which revealed partial tears of the supraspinatus and infraspinatus tendons. Tr. 391. In May 2015, Dr. Al-Humadi diagnosed McCaslin with a tear in his right rotator cuff and suggested surgical intervention. Tr. 376-77. The ALJ acknowledged some of these records in the course of evaluating McCaslin's other impairments, but she did not analyze his shoulder and cervical spine complaints as separate conditions. *See* Tr. 24-27. The ALJ did not include any limitations related to McCaslin's right shoulder or cervical spine in the RFC. Tr. 23.

As an initial matter, the ALJ's failure to discuss any of these conditions may warrant remand by itself. *See, e.g.*, *Masotti v. Comm'r of Soc. Sec.*, No. 14-CV-5081, 2016 WL 5404632, at *6 (E.D.N.Y. Sept. 27, 2016) (collecting cases for the proposition that an ALJ "must clearly state [her] rationale for the conclusions [she] draws"). This is not a case where the conditions were so insignificant that they could not have affected the ALJ's decision. *See Ortiz v. Colvin*, 298 F. Supp. 3d 581, 590 (W.D.N.Y. 2018) (stating that remand is not required where ALJ fails to incorporate certain limitations, if those limitations would not have changed the step-five determination). There is evidence in the record indicating that McCaslin's spine and shoulder complaints were serious. McCaslin complained of decreased grip strength and pain in his shoulders, Tr. 374, a physical therapist's objective findings corroborated McCaslin's complaints, Tr. 323, and Dr. Al-Humadi noted that McCaslin was limited in overhead reaching and suggested surgery to repair his right rotator cuff, Tr. 376-77. If this evidence were credited, McCaslin's functional limitations would be greater than those contained in the ALJ's RFC. Although the Commissioner cites evidence that could support a contrary conclusion, it is the ALJ—not the Commissioner on appeal—who must articulate a rationale for her RFC determination. *See Crosse v. Colvin*, 73 F. Supp. 3d 169, 174 (N.D.N.Y. 2014).

Even if the absence of such discussion did not warrant remand on its own, there was an obvious gap in the record: Dr. Yacob's treatment notes. The record suggests that Dr. Yacob was treating McCaslin for his shoulder and cervical spine complaints in early 2015, as Dr. Yacob referred McCaslin to physical therapy and ordered an MRI of his right shoulder. "The opinions and findings of a treating physician are especially important parts of the record to be developed by the ALJ." *Petersen v. Comm'r of Soc. Sec.*, No. 18-CV-6143, 2019 WL 2051650, at *4 (W.D.N.Y. May 9, 2019) (internal quotation marks and brackets omitted). Because the record contained little evidence related to McCaslin's shoulder and cervical spine complaints, it was incumbent on the ALJ to make a reasonable effort to obtain the notes of the specialist who treated those complaints.

The Commissioner responds that McCaslin is at fault for the evidentiary gap because he never identified Dr. Yacob as a treating source or procured the records himself. The Court disagrees. Even if McCaslin failed to identify Dr. Yacob during the administrative process, the ALJ "cannot be relieved of [her] affirmative obligation to develop the record" where "it is apparent from the face of the record that necessary information is missing." *Ubiles v. Astrue*, No. 11-CV-6340, 2012 WL 2572772, at *10 (W.D.N.Y. July 2, 2012). Likewise, the ALJ "cannot satisfy [the] duty to develop the record merely by requesting that claimant's counsel obtain the missing evidence." *Petersen*, 2019 WL 2051650, at *4. The ALJ must make some additional effort beyond that request. *See id.* Here, the ALJ left the record open to allow McCaslin to submit additional records, but she never followed up with McCaslin or sought to obtain the missing records herself.

Because the ALJ did not fulfill her duty to develop the record, remand to the Commissioner is appropriate. *See Cooper v. Comm'r of Social Sec.*, No. 18-CV-139, 2019 WL 1894205, at *6 (W.D.N.Y. Apr. 29, 2019).

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED and McCaslin's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED.  This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 13, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court